UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| JERRY FRANKLIN HOOKS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COMMISSIONER OF SOCIAL SECURITY, )<br>)<br>Defendant. ) | No. 1:11-cv-166<br><br>*Collier / Lee* |

**REPORT AND RECOMMENDATION**

Plaintiff Jerry Franklin Hooks brought this action pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying him disability insurance benefits ("DIB"). Plaintiff and Defendant have both moved for summary judgment [Docs. 13, 21]. Plaintiff alleges the Administrative Law Judge ("ALJ") improperly failed to incorporate his severe mental impairments in the residual functional capacity ("RFC") he assigned to Plaintiff and failed to solicit appropriate medical input before deciding the date of onset of Plaintiff's mental conditions. For the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for summary judgment [Doc. 13] be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 21] be **GRANTED**; and (3) the decision of the Commissioner be **AFFIRMED**.

I.  **ADMINISTRATIVE PROCEEDINGS**

Plaintiff initially filed his application for DIB on June 4, 2008, alleging disability as of February 15, 2006 (Transcript ("Tr.") 92-94). Plaintiff's claim was denied initially and upon reconsideration and he requested a hearing before the ALJ (Tr. 47-52, 54-59). The ALJ held a hearing on August 19, 2009, during which Plaintiff was represented by an attorney (Tr. 21-44). The

ALJ issued his decision on December 2, 2009 and determined Plaintiff was not disabled because there were jobs in significant numbers in the economy which he could perform (Tr. 7-17). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final, appealable decision of the Commissioner (Tr. 1-3, 5). Plaintiff filed the instant action on June 23, 2011 [Doc. 2].

## II. FACTUAL BACKGROUND

### A. Education and Background

Plaintiff was 48 at the time of the hearing before the ALJ and had completed approximately one year of college (Tr. 23-24). Plaintiff's work history involved mostly stone masonry and tile setting for commercial construction (Tr. 24). Plaintiff had not worked since June 2005 and testified he had experienced back pain for the past 15 years; he first had his back x-rayed in 1986 (Tr. 26-27). Plaintiff testified he experienced back pain every day, and his back would often "go out" with very little exertion (Tr. 26). Plaintiff stated that on some days he was a "little functional," but the next day he might experience extreme pain (Tr. 27). On these bad days, Plaintiff would take Flexeril, but he did not like to take the medication because it slowed him down (Tr. 27). Plaintiff did not have medical insurance at present and could not seek treatment outside the health department (Tr. 28). Plaintiff testified that he could no longer work as a stone mason or tile setter and could only sit for about 30 minutes at a time before he would have to move (Tr. 28). Around the house, Plaintiff helped carry groceries and could sometimes mow his small front yard, but he did not think he could complete the 30-minute job two days in a row (Tr. 29-30).

Plaintiff also testified to other impairments, such as a breathing problem, a high heart rate, diabetes, and problems with his knees (Tr. 29). Plaintiff's knee problems had caused him trouble

2

in the last few months, but his doctor had simply told him the pain medicine for his back should also help his knees, although a notation about his knees could not be located in the doctor's notes (Tr. 30, 32-33). Plaintiff suffered a knee injury playing football in high school that caused numbness, but testified the knee pain was not as severe as his back problems (Tr. 33). Plaintiff also had problems with his hands; he could not put his hands in a comfortable position for any amount of time and would sometimes lose grip (Tr. 42-43). Plaintiff further testified to suffering from depression or anxiety since the 1980's and was currently taking medication for this condition; he stated that he became very anxious at times and was overwhelmed by the weight of what he needed to get done and his other concerns, such as his back pain (Tr. 30-31). Plaintiff's anxiety caused him to lose his temper, and this could happen every day (Tr. 31). Plaintiff had difficulty concentrating and memory loss due to the anxiety and had good days and bad days (Tr. 31). When asked about possibly working as a convenience store clerk, Plaintiff testified he did not think he could perform that type of work because he could not stand that long without experiencing pain, which would lead to anxiety and losing his temper, which would make it difficult for him to work with others (Tr. 32).

  Plaintiff's wife testified she had to help Plaintiff with his socks, shoes and pants several times a week because he had problems bending over and his back would go out on him (Tr. 36). Mrs. Hooks had witnessed Plaintiff's inability to concentrate and described it as Plaintiff veering off from the subject and forgetting what he was talking about; sometimes Plaintiff would go off on rants and his temper would explode (Tr. 37). Mrs. Hooks testified that Plaintiff lost his temper and became so anxious he would vomit several times a week (Tr. 38). The couple had discussed seeking mental health treatment for Plaintiff, but Mrs. Hooks testified they could not afford it. The health department did not provide mental health services (Tr. 39).

3

At the close of the hearing, the ALJ indicated he would send Plaintiff to both a mental and physical consultative examination (Tr. 42).

### B. Vocational Expert Testimony

The ALJ solicited the testimony of vocational expert Jane Colvin-Roberson ("VE") during the hearing. VE testified that Plaintiff's former work as a stone mason and tile cutter was medium, skilled and required heavy strength (Tr. 25). None of the skills used in those jobs were transferrable to light or sedentary work (Tr. 25).

### C. Medical Records

Plaintiff had an MRI of his lumbar spine performed on August 12, 1996 which showed central and left lateral herniation of the disc at L4-5 (Tr. 149). Notes from 1997 and 1998 show Plaintiff complained of low back pain due to a job injury (Tr. 154-55, 239-45). Plaintiff reported the pain was moving down to his legs and he was taking Ibuprofen for the pain (Tr. 155). Plaintiff presented with nervousness on September 14, 2000 and was diagnosed with anxiety and depression; he was prescribed Buspar (Tr. 151-52). On May 10, 2004, Plaintiff presented to Dunlap Medical Center complaining of back pain, muscle spasms, and possible sinus/respiratory infection; (Tr. 159). Plaintiff was prescribed Flexeril (Tr. 150). The notes indicate a prior x-ray revealed mild arthritis of Plaintiff's lumbar spine (Tr. 150). Plaintiff also presented to Dunlap Medical Center on a separate occasion; medical records do not provide the date for this visit (Tr. 160). Plaintiff reported nervousness and depression as his chief complaint (Tr. 160). On November 17, 2004, Plaintiff had an arterial evaluation of his legs, which indicated mild diffuse atherosclerosis and diffuse plaque (Tr. 161).

Plaintiff had a number of tests performed on March 9, 2006 after a motor vehicle accident,

4

and a CT of his lumbar and cervical spine revealed degenerative changes (Tr. 163-65, 175) A chest x-ray suggested early osteophytic disease of the spine (Tr. 170). During his hospital stay, Plaintiff became verbally aggressive and made threats to hospital staff, resulting in the need for restraints which Plaintiff later attempted to remove (Tr. 173, 176).

Notes from November 1, 2007 indicate that Plaintiff complained of pain in his neck and shoulder (Tr. 177). Plaintiff presented as a new patient at the Health Department on October 2, 2008; he returned to have lab work done on October 9, 2008 and returned again on October 20, 2008 to obtain his test results; he was prescribed Synthroid for his hypothyroidism (Tr. 188-92, 194-95). The notes from this initial visit indicate Plaintiff moved easily about the room and was able to sit up and bend forward (Tr. 194).

Plaintiff had an MRI of his lumbar spine on October 30, 2008 which showed degenerative disc disease and mild spinal stenosis at L4-5; it also showed severe stenosis at the L5-S1 level (Tr. 179-80). Plaintiff was seen at the Health Department on November 4, 2008 and December 17, 2008 to review the MRI and obtain medication refills (Tr. 183-86). Plaintiff presented to the Health Department again on January 20, 2009, March 26, 2009, and April 7, 2009 seeking Ibuprofen and medication refills for diabetes and hypothyroidism (Tr. 181-82, 205-08). He returned on May 22, 2009 seeking refills and complaining of low back pain, osteoarthritis and muscle spasms (Tr. 209-10). Plaintiff sought medication refills and documentation for his disability claim on July 23, 2009 (Tr. 211-12).

On September 26, 2009, Dr. Julian Price performed a consultative examination of Plaintiff (Tr. 215-26). Plaintiff reported low back pain that was 6 on a scale of 10 in terms of severity, was constant, and radiated down into his legs and sometimes into his knees (Tr. 215). Plaintiff reported

5

intermittent pain in his wrists and stated he could walk for 15 minutes and stand for ten minutes before needing to sit down (Tr. 215-16). On examination, Plaintiff had a normal range of motion in his cervical spine and in his hips, knees and ankles, but had limited flexion in his lumbar spine and experienced tenderness to palpation that Dr. Price thought was out of proportion to his exam and present to light touch (Tr. 216). Dr. Price noted no palpable spasms were present (Tr. 216). Dr. Price opined Plaintiff could lift and carry over 50 pounds occasionally, 20 to 50 pounds frequently, and was unrestricted in his ability to carry less than 20 pounds (Tr. 217). Dr. Price further opined Plaintiff could sit and stand for eight hours in a workday and could walk for two hours at a time for up to six hours in a workday (Tr. 217). Plaintiff had no restrictions on the use of his feet and hands, but his low back pain would limit him to climbing ramps, ladders or scaffolds only frequently and he could balance, stoop, kneel, crouch, or crawl only frequently (Tr. 217). Dr. Price also opined Plaintiff should only frequently be exposed to unprotected heights (Tr. 217).

David Thompson, M.A. conducted a psychological evaluation of Plaintiff on September 28, 2009 (Tr. 227-31). Mr. Thompson noted Plaintiff was late for his appointment and was angry and hostile throughout the interview; he expressed hostility towards Mr. Thompson, the Social Security Administration, and other governmental entities (Tr. 227-28). Plaintiff expressed frustration with various problems in his life for which others were to blame and gave lengthy explanations for the problems (Tr. 228). Mr. Thompson noted Plaintiff had average intellectual ability and was generally able to care for his personal needs, although Plaintiff stated he sometimes needed help with dressing and showering when his back went out (Tr. 229-30). Plaintiff told Mr. Thompson that he could lift approximately 50 pounds because he was still quite powerful, and stated he occasionally cooked, helped his wife with laundry, drove, and went shopping with his wife (Tr. 230). Mr. Thompson

diagnosed Plaintiff with depressive disorder, not otherwise specified and personality disorder, not otherwise specified, and indicated Plaintiff would be slightly limited in his abilities to understand, remember, and sustain concentration and persistence (Tr. 230). Plaintiff was markedly limited in his ability to interact with others and was moderately to markedly limited in his ability to adapt to changes and requirements (Tr. 230-31).

## III. ALJ'S FINDINGS

### A. Eligibility for Disability Benefits

The Social Security Administration determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The process provides:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment-i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities-the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

7

Case 1:11-cv-00166-CLC-SKL   Document 24   Filed 06/15/12   Page 7 of 17   PageID #: 200

### B. ALJ's Application of the Sequential Evaluation Process

At step one of the sequential evaluation process, the ALJ found Plaintiff had not engaged in any substantial gainful activity since June 30, 2005, the alleged onset date (Tr. 12).[1] At step two, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease, obesity, a depressive disorder, and a personality disorder (Tr. 12). The ALJ determined these impairments were severe because they caused significant limitations in Plaintiff's ability to perform basic work activities (Tr. 12). At step three, the ALJ found Plaintiff did not have any impairment or combination of impairments to meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App'x. 1 (Tr. 12). The ALJ specifically discussed his consideration of the combined effects of Plaintiff's obesity and Listing 12.04 as it pertained to Plaintiff's mental impairments (Tr. 12-14). The ALJ determined Plaintiff had the RFC to perform a full range of light work (Tr. 14). At step four, the ALJ found Plaintiff was unable to perform any of his past relevant work (Tr. 16). At step five, the ALJ noted Plaintiff was age 44, a younger individual, as of the disability onset date (Tr. 16). After considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs that existed in significant numbers in the national economy which Plaintiff could perform (Tr. 16). This finding led to the ALJ's determination that Plaintiff was not under a disability from June 30, 2005, the alleged onset date, through June 30, 2005, the date last insured (Tr. 17).

---

[1] Plaintiff alleged an onset date of February 15, 2006; however, Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2005. Therefore, the ALJ concluded (and it is not contested) that Plaintiff must establish disability as of or before that date to be entitled to disability benefits (Tr. 10).

8

## IV. ANALYSIS

Plaintiff asserts two arguments: first, he argues the ALJ's RFC determination is not based on a reasoned evaluation of all the evidence because it did not incorporate limitations necessary due to Plaintiff's severe mental impairments. Second, Plaintiff argues that the ALJ improperly failed to obtain input from a medical advisor when determining the onset date for Plaintiff's allegedly disabling mental conditions.

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters*, 127 F.3d at 528). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Id.* (internal quotes omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decisionmakers because it presupposes there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

9

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sep. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claim of error without further argument or authority may be considered waived).

### B.     ALJ's RFC Determination

Plaintiff argues the ALJ failed to incorporate Plaintiff's severe mental impairments when he determined Plaintiff retained the RFC to perform a full range of light work [Doc. 14 at PageID#: 145]. Plaintiff asserts the ALJ recognized Plaintiff had severe impairments due to depression and a personality disorder and noted the determination that Plaintiff was markedly limited in social functioning, but did not impose any mental limitations on his ability to work [*id.* at PageID#: 146]. Plaintiff argues the RFC, therefore, is inconsistent with the ALJ's own findings and is not supported by the opinion of Mr. Thompson [*id.* at PageID#: 146-47]. Plaintiff further argues the ALJ erred

10

by using the Grids[2] to determine there was work Plaintiff could perform in the national economy because the evidence showed that Plaintiff had nonexertional impairments which limited him from performing a full range of light work [*id.* at PageID#: 149-51].

The Commissioner asserts that Plaintiff's argument focuses heavily on the 2009 psychological examination performed by Mr. Thompson, which was far beyond his date last insured of June 2005 and cannot be used to establish any mental disability prior to that time [Doc. 22 at PageID#: 181]. The Commissioner contends there is no other evidence of Plaintiff's mental status prior to 2005 which would support a finding a disability as of June 30, 2005 beyond a note from September 2000 indicating that Plaintiff was prescribed Buspar for complaints of depression and anxiety [*id.* at PageID#: 182]. The Commissioner argues that Plaintiff has not established any marked mental limitations on or before June 30, 2005 and that the ALJ properly applied the Grids to find that Plaintiff could perform the full range of light work [*id.* at 182-83].

"In order to establish entitlement to disability insurance benefits, an individual must establish that he became 'disabled' prior to the expiration of his insured status." *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) (citing to 42 U.S.C. § 423(a) and (c) and *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). "The crucial date in a social security case is the date that claimant's insured status expired" and evidence of disability after that date is "generally of little probative value." *May*

---

[2] If a claimant's RFC exactly matches one of the defined categories of work (e.g., "sedentary," "light," or "medium" work), then the SSA may use the Medical-Vocational Rules ("Grids") to make the final determination of disability. *Templeton v. Comm'r of Soc. Sec.*, 215 F. App'x 458, 463 (6th Cir. 2007) (citing *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 537 (6th Cir. 2001)). If, however, the claimant suffers from "nonexertional" impairments in addition to his physical impairments (e.g., mental limitations), the ALJ may use the grids only as a "framework" for decision, and other evidence is required to prove the claimant can perform jobs existing in significant numbers. *Burton v. Sec'y of Health & Human Servs.*, 893 F.2d 821, 822 (6th Cir. 1990).

11

*v. Astrue*, No. 4:10CV1533, 2011 WL 3490186, at *5 (N.D. Ohio June 1, 2011). "Medical evidence dated after a claimant's expiration of insured status is only relevant to a disability determination where the evidence 'relates back' to the claimant's limitations prior to the date last insured." *Id.; see also Wirth v. Comm'r of Soc. Sec.*, 87 F. App'x 478, 480 (6th Cir. 2003) ("Post-expiration evidence must relate back to the claimant's condition prior to the expiration of her date last insured."). Of particular importance in this case, "[t]he related back evidence is relevant only if it is reflective of a claimant's limitations prior to the date last insured, rather than merely his impairments or condition prior to this date." *May*, 2011 WL 3490186, at *5.

There are only two medical records which speak to Plaintiff's mental state prior to June 30, 2005--the note referenced by the Commissioner from 2000, when Plaintiff was prescribed Buspar for depression and anxiety (Tr. 151-52), and an undated note where Plaintiff presented complaining of nerves and lack of motivation from depression, and indicated a history of nervousness and depression (Tr. 160). Neither the records nor the testimony at the hearing establish the severity of any mental condition as of 2000 or 2004 (or any other time prior to June 30, 2005, for that matter), and Plaintiff was still working at the time these records were made, which would seem to indicate that any mental condition from which he may have been suffering at the time was not severe enough to impact his ability to perform normal work activities. As such, there is no evidence of nonexertional limitations stemming from severe mental impairments prior to June 30, 2005 that would have rendered the ALJ's reliance on the Grids inappropriate.

Essentially, Plaintiff argues against what could be viewed as an internal inconsistency in the ALJ's opinion where the ALJ determined Plaintiff had severe impairments of depression and personality disorder through the date last insured, but did not impose any limitations as a result of

12

these impairments in his RFC determination. The severe impairments listed by the ALJ appear to be based on Mr. Thompson's evaluation of Plaintiff in 2009, but the ALJ necessarily found that Plaintiff was not disabled because he had no disabling mental impairments as of June 30, 2005. As the Commissioner points out, Plaintiff's reliance on Mr. Thompson's psychological evaluation in 2009 does not support that Plaintiff had disabling mental impairments as of his date last insured and, although the ALJ could have stated that more clearly in making his RFC determination, any error is harmless because remand would be a formality.

I **FIND** that there is no evidence in the record supporting the existence of severe, disabling mental impairments prior to June 30, 2005, Plaintiff's date last insured, which would have established nonexertional limitations on Plaintiff's ability to work. Therefore, I **CONCLUDE** the ALJ's use of the Grids to determine that Plaintiff retained the ability to work a full range of light work as of that date was proper. Although the ALJ erred by indicating that Plaintiff had severe impairments of depression and personality disorder through the date last insured because, as noted above, there is essentially no evidence of these impairments being severe or causing limitations through June 30, 2005, I **CONCLUDE** any error or internal inconsistency in the opinion is harmless. I **CONCLUDE** the crux of the ALJ's finding that Plaintiff was not disabled prior to June 30, 2005 is supported by substantial evidence, and the impact of the ALJ's inconsistent statements does not detract from the substantial evidence supporting this finding.

### C. Plaintiff's Disability Onset Date

Plaintiff argues that the ALJ's statement about his symptoms worsening in 2008 is essentially a finding that Plaintiff is now disabled and that, as such, the ALJ should have solicited medical advice as to the onset date of Plaintiff's impairments [Doc. 14 at PageID#: 151-52]. Plaintiff asserts

13

the evidence supports an inference that Plaintiff's mental impairments were disabling before June 30, 2005 because Plaintiff's personality disorder would have had an early onset and his discharge from military service was based on mental problems [*id.* at PageID#: 152-53]. Finally, Plaintiff argues that his spotty work record from 1996 to 2005 is consistent with the psychological examiner's conclusions about Plaintiff's problems working with others, and that his behavior in the hospital following the 2006 car accident is indicative of longstanding, pervasive mental problems [*id.* at PageID#: 153-54]. Therefore, Plaintiff contends the evidence is sufficient to establish that Plaintiff had disabling mental impairments prior to 2005 [*id.* at PageID#: 154-55].

The Commissioner asserts that the ALJ's statement about Plaintiff's worsening condition was in reference to a note about Plaintiff's lumbar spine and his back pain, not about Plaintiff's mental impairments [Doc. 22 at PageID#: 183]. The Commissioner argues that because the medical record contains no evidence of disabling mental conditions before June 30, 2005, medical advice as to the alleged onset date is unnecessary [*id.* at PageID#: 184].

The ALJ's statement referred to by Plaintiff states, "[a]lthough the claimant's symptoms clearly worsened in October 2008, the claimant no longer met the insured status requirements as required by 20 C.F.R. § 404.101, therefore no benefits are payable based on the claimant's earnings" (Tr. 16). Earlier in the opinion, the ALJ referenced notes from the Sequatchie County Health Department and Plaintiff's MRI, both from October 2008 (Tr. 15). As the Commissioner notes, there are no notes concerning Plaintiff's mental impairments in October 2008; indeed, as noted above, the only evidence in the record concerning Plaintiff's mental condition prior to the consultative examination with Mr. Thompson is the 2000 note in which Plaintiff was diagnosed with anxiety and prescribed Buspar and the 2004 note indicating a history of depression and nervousness

14

(Tr. 151-52, 159-60). Plaintiff's argument that this statement essentially establishes that he is disabled is not supported by the record, at least with respect to his mental impairments, .

Although Plaintiff urges that a medical opinion as to the onset of his allegedly disabling mental conditions might alter the ALJ's conclusion that he did not have disabling mental impairments as of his date last insured, any medical opinion seeking to probe the history of Plaintiff's mental illness up to more than a decade ago would likely be mere speculation. Indeed, as it stands, the evidence which Plaintiff points to in support of the assertion that a medical opinion would assist in this regard is mainly speculative. Even if it were not, a current medical opinion that any mental illness from which Plaintiff claims to suffer started prior to his date last insured would not support Plaintiff's claim in the absence of evidence establishing the severity of these conditions prior to June 30, 2005, as a diagnosis alone does not establish the severity of the condition. *Foster v. Bowen*, 853 F.2d 483, 488-89 (6th Cir. 1988); *Murphy v. Sec'y of Health & Human Servs.*, 801 F.2d 182, 185 (6th Cir. 1986).

It is Plaintiff's burden to establish the severity of his impairments and, with or without a medical opinion to pinpoint the onset of his mental impairments, Plaintiff has failed to meet his burden of establishing that any mental impairments which began prior to June 30, 2005 were sufficiently severe to prevent him from undertaking any work. As noted above, any evidence after the date last insured that might relate back "is relevant only if it is reflective of a claimant's limitations prior to the date last insured." *May*, 2011 WL 3490186, at *5.

The evidence in the record from after June 2005 does not adequately reflect any work-related mental limitations Plaintiff experienced prior to June 30, 2005. Indeed, the examination with Mr. Thompson is so far removed from Plaintiff's date last insured that it would be quite difficult to relate

15

the information contained in that examination back to Plaintiff's mental condition as or of before his date last insured; even if the diagnoses related back, Plaintiff once again would have the burden to establish the severity of the conditions, and he cannot meet this burden based on the evidence in the record. I **FIND** the medical evidence in the record does not support the claim that Plaintiff suffered from a mental condition before June 30, 2005 that was of such severity that it would have rendered him disabled or caused significant work-related limitations. In the absence of such evidence, I **CONCLUDE** a medical opinion that Plaintiff's mental conditions began prior to June 30, 2005 would be of little use to the ALJ and the ALJ did not err in failing to seek medical advice on this issue.

Accordingly, I **CONCLUDE** the decision of the ALJ was supported by substantial evidence and the ALJ properly found that Plaintiff had not established a disability through June 30, 2005, his date last insured.

## V. CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I **RECOMMEND** that:[3]

(1) Plaintiff's motion for summary judgment [Doc. 13] be **DENIED**.

---

[3] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

(2) The Commissioner's motion for summary judgment [Doc. 21] be **GRANTED**.

(3) The Commissioner's decision denying benefits be **AFFIRMED**.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE